## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **BENCHMARK INSURANCE COMPANY,** § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> **DO-RITE FOUNDATION, LLC** a Texas § <br> limited liability company; **CARLOS** § <br> **TREVINO**; and **PABLO SANCHEZ** and § <br> **DORIS H. SANCHEZ**, husband and wife § <br> Defendants. | **NO: 4:19-CV-1378** |

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint for Declaratory Judgment, Plaintiff Benchmark Insurance Company states and alleges as follows:

## JURISDICTION & VENUE

1. Benchmark Insurance Company ("Benchmark") is in the business of selling insurance. It is a Kansas corporation with its principal place of business in Minnesota. It is therefore a citizen of Kansas and Minnesota.

2. Benchmark brings this action under 28 U.S.C. §§ 2201 and 2202 for declaratory relief regarding the parties' rights and obligations under an insurance policy described herein.

3. Do-Rite Foundation, LLC is a Texas limited liability company, whose sole member is Carlos Trevino ("Trevino"). Trevino is an individual who resides in Texas, and is therefore a citizen of Texas. Because Do-Rite Foundation, LLC's sole member is an individual who resides in Texas, Do-Rite Foundation, LLC is a citizen of Texas. Trevino and Do-Rite Foundation, LLC are hereafter together referred to as "Do-Rite".

4.     Pablo Sanchez and Doris H. Sanchez (hereafter together referred to as "Sanchez") are individuals who reside in Texas, and are therefore citizens of Texas.

5.     Pablo and Doris Sanchez asserted claims against Do-Rite that are the subject of the insurance dispute that gives rise to this action.  Pablo and Doris Sanchez are therefore named as parties because they may have an interest in the declaratory relief sought in this action.

6.     The amount in controversy exceeds the sum or value of $75,000; specifically, Sanchez seeks damages from Do-Rite that exceed $75,000 and the declaratory relief sought herein involves whether the policy issued by plaintiff covers those damages.  In addition, this dispute involves the issue whether the policy obligates plaintiff to defend Do-Rite.  Defense expenses have been and continue to be incurred by plaintiff on behalf of Do-Rite.  Thus, the amount in controversy significantly exceeds $75,000.

7.     Benchmark denies that coverage exists for damages sought by Sanchez from Do-Rite.

8.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the plaintiff on the one hand and the defendants on the other are citizens of different states.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

10.    Benchmark issued Do-Rite insurance policy number BIC5011562, for the period January 19, 2015 to January 19, 2016 ("Policy").

11.    Subject to all terms, conditions, exclusions, and endorsements, the Policy provides Commercial General Liability Coverage subject to a $1,000,000

each occurrence limit and a $2,000,000 general aggregate limit. Coverage is also subject to a $500 deductible per claim.

12. The Policy's Commercial General Liability Coverage Form contains the following statement: "VARIOUS PROVISIONS IN THIS POLICY MAY BE MORE RESTRICTIVE THAN YOU ARE FAMILIAR WITH OR HAVE PREVIOUSLY PURCHASED. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED."

13. Under Section I of the Commercial General Liability Coverage Form ("CGL Form"), the Coverage A insuring agreement states in part: "**We** will pay those sums the **insured** legally becomes obligated to pay as **tort** damages for **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend an **insured** * * * against any **suit** seeking those damages." The insuring agreement further states in part: "This insurance applies only to **bodily injury** and **property damage** only if: (1) the **bodily injury** or **property damage** is caused by an **occurrence** * * * and (2) the **bodily injury** or **property damage** resulting from such **occurrence** first takes place during the **policy period** * * *." The insuring agreement further states: "**We** will have no duty to defend any **insured** against any **suit** seeking damages to which this insurance does not apply."

14. The Policy defines "tort" as follows: "**Tort** means liability or damages that would be imposed by law in the absence of any contract or agreement." The Policy defines "property damage" as follows: "**Property damage** means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it. Loss of use of tangible property unaccompanied by physical injury to that property is not **property damage**." The Policy defines "occurrence" as follows: "**Occurrence** means an accident, including a continuous or repeated exposure to substantially the same generally harmful condition." The Policy defense "**bodily**

**injury**" to not include mental distress "unless such condition results solely and directly from prior physical injury, physical sickness, or physical disease otherwise covered under this policy."

15. The CGL Form has an "exclusions" section that states in part as follows:

> EXCLUSIONS: COVERAGES A AND B
>
> The following exclusions apply regardless of whether any other cause or causes contributed, in whole or in part, directly or indirectly or concurrently or in any sequence, with the excluded matters to cause **bodily injury, property damage, personal injury** or **advertising injury**, and regardless of whether any other contributing or concurrent cause or causes of the **bodily injury, property damage, personal injury** or **advertising injury** are covered by this policy.
>
> This insurance does not apply to:
>
> * * *
>
> J.   DAMAGE TO PROPERTY
>
>   **Property damage** to:
>
>   * * *
>
> (5)   That particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or
>
> (6)   That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.
>
> * * *
>
> Paragraph (6) of this exclusion does not apply to **property damage** included in the p**roducts-completed operations hazard.**
>
> For purposes of paragraphs (5) and (6) of this exclusion, if **you** are a general contractor, construction supervisor, construction manager or developer, the entire construction project or job site at which **your work** is being performed or services provided will be considered "that particular part" of real or other property.
>
> For purposes of paragraph (5), **you** or any contractors or

subcontractors working directly or indirectly on **your** behalf will be deemed to be "performing operations" from the time **you** or the contractors or subcontractors begin work until such operations are complete as set forth in the definition of **products-completed operations hazard**.

\* \* \*

L.   DAMAGE TO **YOUR WORK**

**Property damage** to **your work** or any part of it and included in the **products-completed operations hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

M.   DAMAGE TO **IMPAIRED PROPERTY** OR PROPERTY NOT PHYSICALLY INJURED

**Property Damage** to **impaired property** or property which has not been physically injured arising out of:

(1)   A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms; or

(2)   A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**.

This exclusion applies to property which is otherwise not physically injured or damaged but which must be demolished, removed, repaired, replaced, altered or damaged in order to remove, repair or replace **your work** or **your product**.

\* \* \*

P.   PUNITIVE DAMAGES, EXEMPLARY DAMAGES, MULTIPLICATION OF DAMAGES, FINES OR PENALTIES

**Claims** or **suits** for punitive or exemplary damages, fines or penalties of any nature whether or not imposed by or under any law, statute, or ordinance of any federal, state or municipal government agency, including multiplication of compensatory damages and multiplication of attorney fees.

\* \* \*

R.   EARTH MOVEMENT

**Bodily injury, property damage** or **personal injury** arising from, aggravated by, or as a consequence of earth movement, whether the earth movement is combined with any other cause. As used in this exclusion the term earth movement includes, but

is not limited to, loss of lateral support, avalanche, earthquake, tremors, aftershocks, landslide, subsidence, mud flows, sink holes, erosion or any change in the level of soil or earth by any caused including contracting, sinking, shifting, expanding, heaving, rising, removal of topsoil or any other movement of soil or earth.

This exclusion applies regardless of the cause or causes of the earth movement and includes defects or negligence in design, construction or materials, or any other event, conduct or misconduct which may have or is claimed to have aggravated, precipitated, caused or acted jointly, concurrently, or in any sequence with earth movement in causing the **bodily injury, property damage** or **personal injury** arising out of the mitigation, repair or avoidance of earth movement.

Notwithstanding the provisions of this policy regarding the duty to defend an **insured** as described in Section I – Coverages A and B of this policy, where a **suit** is based in whole or in part upon **bodily injury, property damage** or **personal injury** liability for which is excluded by this exclusion, **we** will have the right, but not the obligation, to defend said **suit**. When **we** do not elect to defend an **insured** in such **suit**, **we** will reimburse such **insured** for the reasonable attorneys' fees and litigation expenses incurred by the **insured** in accordance with paragraph 13 of Section IV – Commercial General Liability Conditions.

\* \* \*

AA.   PROFESSIONAL LIABILITY

**Bodily injury, property damage, personal injury** or **advertising injury** arising out of the performance of professional services by anyone. Notwithstanding the provisions of this policy regarding the duty to defend an **insured** as described in Section 1 – Coverages A and B of this policy, where a **suit** is based in whole or in part upon **bodily injury, property damage, personal injury** or **advertising injury** liability for which is excluded by this exclusion, **we** will have the right, but not the obligation, to defend said **suit**. When **we** do not elect to defend an **insured** in such **suit, we** will reimburse such **insured** for the reasonable attorneys fees and litigation expenses incurred by the **insured**, in accordance with paragraph 13 of Section IV – Commercial General Liability Conditions.

\* \* \*

FF.   BREACH OF CONTRACT OR WARRANTY

**Bodily injury, property damage, personal injury** or **advertising injury** arising directly or indirectly, out of the actual or alleged breach of any express or implied contract, agreement or statutory or contractual warranty.

GG.  ATTORNEY FEES AND EXPERT FEES OF OTHERS

Any **claim, suit**, demand, request or award against any **insured** comprised, in whole or in part, of any attorney fees and costs, expert fees and costs, sanctions or any other cost or expense incurred by any other party to any **claim** or **suit,** including any other **insured** under this policy. This exclusion applies regardless of whether any of the expenses or costs described above were awarded in a **suit** as damages or costs.

This exclusion does not apply to our obligations under an **insured contract.**

16. At all relevant times, Sanchez owned a home at 5909 Holly Street, Houston, Texas (the "Home").

17. The Home and its foundation were constructed in the 1950s. Prior to June 2015, the Home had been damaged by repeated flooding.

18. Sanchez contracted with Do-Rite to raise the foundation of the home.

19. The contract called for Do-Rite to "install 46 hydraulic driven piers on exterior of structure" and "29 hydraulic driven piers on interior of structure." Do-Rite also contracted to "fill void underneath home with a slurry of Portland cement and sandy loam." Do-Rite began the foundation operations in August 2015.

20. While Do-Rite was performing the foundation operations, cracks began to occur because of the age and weakness in the existing foundation.

21. Do-Rite informed Sanchez that no further lifting should be attempted because of the risk of additional damages.

22. Despite being cautioned against further attempts to lift the Home, Sanchez instructed Do-Rite to continue the lifting operations.

23. Do-Rite was only willing to continue such lifting operations if Sanchez agreed that he would be responsible for any damage.

24. Because Sanchez decided to assume that responsibility and did so in writing, Do-Rite continued to attempt to lift the home.

25. The foundation was in a condition that prevented it from being lifted further, and it sustained additional cracks and damage, causing the operation to cease.

26. Sanchez filed a lawsuit against Do-Rite in the District Court of Harris County, Texas, Case No. 2016-12570, under the caption *Pablo Sanchez and Doris H. Sanchez v. Do-Rite Foundation, LLC, et al.* ("Underlying Lawsuit").

27. In the Underlying Lawsuit, Sanchez's amended petitions alleged claims for negligence, negligent misrepresentation, negligent hiring, supervision and retention, breach of contract, violations of the Deceptive Trade Practice Act, as well as alter ego liability against Carlos Trevino.

28. In the Underlying Lawsuit, Sanchez also asserted causes of action against Guillermo Salcedo, PE, and Salcedo Engineering, LLC ("Salcedo Defendants") for negligence and breach of contract.

29. In the Underlying Lawsuit, Sanchez sought damages, including return of all monies paid under the contract, replacement value of the subject property, expenses incurred as a result of having to rent a house, loss of mortgage payments, loss of income arising from Sanchez's inability to operate his business from the Home, and miscellaneous expenses related to the engineering and eventual removal of the subject property. Sanchez also sought treble damages, compensation for mental anguish, and attorney fees under the Deceptive Trade Practice Act.

30. Do-Rite tendered the Underlying Lawsuit to Benchmark.

31. Benchmark has provided a defense to Do-Rite in connection with the Underlying Lawsuit, subject to a reservation of rights set forth in correspondence dated April 8, 2016 and supplemental correspondence dated July 10, 2018. In particular, Benchmark has reserved the right to withdraw from the defense, the right to contend that it is not obligated to defend or indemnify Do-Rite, and the right to commence a declaratory judgment action.

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT REGARDING DUTY TO INDEMNIFY)

32. Benchmark realleges paragraphs 1 through 31 above as if fully set forth in this claim for relief.

33. The claims and damages alleged by Sanchez in the Underlying Lawsuit are not covered by the Policy, and Benchmark has no duty to indemnify Do-Rite in connection with that lawsuit.

34. The claims and damages alleged by Sanchez in the Underlying Lawsuit are not covered by the Policy for reasons including, but not limited to, the following: (a) the insured was performing operations on the Home; those operations caused damage to the Home while the operations were being performed; and the policy does not cover property damage to property upon which the insured is performing operations as long as the damages occur before the operations are completed; (b) the damage to the Home was caused at least in part by earth movement, and the policy does not cover property damage caused at least in part by earth movement; (c) the damage to the Home arose directly or indirectly from alleged breaches of contract or warranty, and the policy does not cover such damage; (d) Sanchez seeks to recover attorney fees from Do-Rite, and the policy does not cover attorney fees of others; (e) Sanchez seeks to recover treble and exemplary damages, and the policy does not cover such damages; (f) Sanchez seeks to recover damages for purely economic losses, and the policy does not cover such economic losses because they do not constitute "damage for property damage" within the meaning of the policy; (g) Sanchez alleges that damage to the foundation occurred because of an improper plan for lifting the Home, and development of such plan is a "professional service" that is excluded by the policy; (h) Sanchez seeks damages for mental anguish, and the policy does not cover such mental anguish; (i) Sanchez alleges claims for knowing and intentional actions in violation of the Deceptive Trade Practice Act,

and such actions are not an "accident" or "occurrence" within the meaning of the policy.

35. An "actual controversy" exists within the meaning of 28 U.S.C. §§ 2201 & 2202 between Benchmark on the one hand and Defendants on the other regarding the coverage available under the Policy.

36. Benchmark is entitled to a judicial declaration that it has no obligation under the Policy to indemnify Do-Rite, or to pay Sanchez, for any portion of any judgment or settlement in the Underlying Lawsuit.

## SECOND CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT REGARDING DUTY TO DEFEND)

37. Benchmark realleges paragraphs 1 through 36 above as if fully set forth in this claim for relief.

38. The damages sought in the Underlying Lawsuit do not fall within any of the coverage provided by the Policy.

39. Because none of the damages sought are covered by the Policy, Benchmark has no duty to defend or pay defense expenses incurred on behalf of Do-Rite in the Underlying Lawsuit.

40. Benchmark has incurred defense expenses on behalf of, and for the benefit of, Do-Rite in the Underlying Lawsuit.

41. An "actual controversy" exists within the meaning of 28 U.S.C. §§ 2201 & 2202 between Benchmark on the one hand and Do-Rite on the other regarding whether a duty to defend or to pay defense costs existed under the Policy.

42. Benchmark is entitled to a judicial declaration that it has no obligation under the Policy to defend or pay defense costs on behalf of Do-Rite in connection with the Underlying Lawsuit.

43. Benchmark is entitled to reimbursement from Do-Rite all sums incurred in the defense of Do-Rite in connection with the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Benchmark respectfully asks this Court to enter judgment in favor Benchmark and against defendants as follows:

A. Declaring that the Policy does not provide coverage for claims and damages alleged in the Underlying Lawsuit, and that Benchmark has no obligation to indemnify Do-rite in connection with that lawsuit;

B. Declaring that Benchmark has, and had, no obligation to defend Do-Rite in connection with the Underlying Lawsuit;

C. Declaring that Do-Rite is obligated to reimburse Benchmark for those sums Benchmark has paid in defense expenses on behalf of Do-Rite in connection with the Underlying Lawsuit, and awarding Benchmark those sums, as determined by the court, together with pre- and post-judgment interest;

D. Awarding Benchmark its costs and attorney fees incurred herein; and

E. Awarding or granting to Benchmark such other relief as the court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury under Texas law.

Respectfully submitted,

**FLETCHER, FARLEY,
SHIPMAN & SALINAS, L.L.P.**
2530 Walsh Tarlton Lane, Suite 150
Austin, Texas 78746
(512) 476-5300
FAX (512) 476-5771

By: /s/ Joanna Lippman Salinas
Joanna Lippman Salinas
State Bar No. 00791122
joanna.salinas@fletcherfarley.com

Attorneys for Plaintiff,
BENCHMARK INSURANCE COMPANY